UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
HERSHEY FOODS CORPORATION and HERSHEY :
CHOCOLATE & CONFECTIONERY             :
CORPORATION,                          :     05 Civ. 970 (JSR)
                                      :
            Plaintiffs,               :     MEMORANDUM ORDER
                                      :
      -v-                             :
                                      :
VOORTMAN COOKIES LIMITED,             :
                                      :
            Defendant.                :
--------------------------------------- x

JED S. RAKOFF, U.S.D.J.

Plaintiffs Hershey Foods Corporation and Hershey Chocolate & Confectionary Corporation (collectively, "Hershey") manufacture the ZERO® candy bar (the "Zero bar"), which is the size of a typical candy bar and contains a caramel, peanut, and almond nougat center covered with white fudge. The Zero bar is packaged in a silver wrapper that prominently features the word "Zero" in white letters, heavily outlined in navy blue with a mild amount of sky blue filling the spaces in between the letters. The bottom of the letter "Z" extends the length of the product packaging and travels under the last three lowercase letters of the word "Zero."[1] The ZERO® mark has been in continuous use in the United States for over 70 years on a candy bar substantially similar to the product currently produced by Hershey. See Declaration of Eric Lent, March 11, 2005 ("Lent Decl."), ¶ 3. The Zero bar is sold in stores throughout the United

---

[1] The wrapped Zero candy bar was handed up by plaintiffs' counsel at oral argument, along with a wrapped package of Zeer-Oh's! cookies. They are deemed marked as Plaintiffs' Exhibits 1 and 2, received for purposes of the instant motion practice.

States and accounts for approximately $30 million of Hershey's gross sales. See id. ¶ 6.

Defendant Voortman Cookies Limited ("Voortman") began manufacturing Zeer-Oh's! cookies approximately 10 months ago. See Declaration of Adrian Voortman, April 1, 2005 ("Voortman Decl."), ¶ 11. A Zeer-Oh's! cookie largely resembles the familiar Oreo cookie, i.e., two, chocolate-brown cookies sandwiching a white, creme-like filling. The product package, which contains three rows of cookies, is about 7 1/2 inches long, 5 1/4 inches wide, and 2 inches deep. At the top of the front of the package prominently appears the Voortman name (in white) and logo (in red) on the upper left-hand corner. The Zeer-Oh's! name, written in white, capital letters, surrounded by a navy blue and sky blue outline, sits atop the following slogan: "ZERO grams TRANS FATS!". Additionally, the Zeer-Oh's! name is not wholly straight, but rather is canted toward the upper right-hand corner in a wave-like fashion. White, sky blue, red, and navy stripes run from the bottom left-hand corner of the wrapper to the top right-hand corner. Two, over-sized pictures of Zeer-Oh's! cookies are featured on the bottom right-hand corner. Finally, a yellow rectangle is set in the lower left-hand corner that reads "ZERO grams TRANS FATS! NON-HYDROGENATED!" Zeer-Oh's! are sold in the vast majority of the United States; sales for the past 10 months are estimated at $2 to $2.5 million. See Id. ¶¶ 13-14.

On January 28, 2005, Hershey's filed the instant Complaint contending that Voortman's "Zeer-Oh's!" mark infringes upon Hershey's

"ZERO®" trademark.  Specifically, plaintiffs allege (1) trademark infringement in violation of 15 U.S.C. § 1114(1)(a), (2) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), (3) trademark dilution in violation of 15 U.S.C. § 1125(c), (4) trademark infringement and unfair competition in violation of New York state common law, (5) trademark dilution in violation of New York General Business Law § 360-1, and (6) false advertising and deceptive acts and practices in violation of New York General Business Law §§ 349 and 350.  Voortman has brought two false advertising counterclaims pursuant to 15 U.S.C. § 1125(a).

On March 11, 2005, Hershey moved for a preliminary injunction to enjoin Voortman from infringing Hershey's "ZERO®" trademark with Voortman's "Zeer-Oh's!" mark and defendant moved to transfer this case to the Western District of New York.  On April 5, 2005, Hershey moved to dismiss defendant's counterclaims.  The Court heard oral argument on these three motions on April 27, 2005, after which the Court, from the bench, denied defendant's motion to transfer, see transcript, April 27, 2005; Order dated April 27, 2005, and otherwise reserved judgment.  The Court now denies plaintiffs' motion for a preliminary injunction.  A subsequent Memorandum Order will address the motion to dismiss the counterclaims.

To obtain a preliminary injunction, a movant must demonstrate "probability of irreparable harm in the absence of injunctive relief, and either [1] a likelihood that its will succeed on the merits of its claim, or [2] a serious question going to the merits and a

3

balance of hardships tipping decidedly in its favor." Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 145 (2d Cir. 2003) (citing Jackson Dairy, Inc. V. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)). In attempting to meet this standard, Hershey essentially relies on a claim of potential consumer confusion. "[A] showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable harm and a likelihood of success on the merits." Virgin Enters., 335 F.3d at 145 (citing Bristol-Myers, 973 F.2d 1033, 1038 (2d Cir. 1992)).

In assessing whether there is a likelihood of confusion between the two marks, a court must undertake the familiar analysis set forth by Judge Friendly in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir.), cert. denied, 368 U.S. 820 (1961): "Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." Id. at 495. It needs to be remembered, however, that the Polaroid factors are merely meant to provide a "useful guide through a difficult quagmire." Lois Sportswear v. Levi Strauss, 799 F.2d 867, 872 (2d Cir. 1986). They

4

are not meant to be applied rigidly, but rather flexibly, since "each case . . . presents its own peculiar circumstance."  Id.

Here, although Hershey's mark is strong (the first factor), it is substantially dissimilar to Voortman's mark (the second factor).  While Hershey initially contended that the packaging of the two products was "nearly identical in appearance," this is patently untrue.  The Zero bar's wrapper is predominantly silver and the size of a normal candy bar, while Zeer-Oh's! wrapper is white, navy blue, sky blue, and red, features a picture of cookies and several references to its containing zero trans fats, and is several times larger than the Zero's wrapper.  Similarly, the marks themselves are readily distinguishable in appearance.  Hershey's ZERO® mark uses both uppercase and lowercase lettering; is stamped straight across the package; is only outlined in one color; and contains an exaggerated "Z" that surrounds the bottom of the word "Zero."  By contrast, Voorman's mark is stamped in all capital letters; is angled substantially; uses a different typeface; and is bordered by red, white, and blue stripes.  Nor is the meaning of the two marks easily confused by the average consumer.  The meaning of zero as applied to the Hershey product is wholly arbitrary and connotes nothing in particular, while the meaning of zero as applied to the Voortman product clearly denotes, as the packaging prominently states, the fact its cookies contain no trans fats.

At oral argument, therefore, Hershey increasingly fell back on the fact that the sound of "zero" is, obviously, not unlike the sound of "Zeer-Oh's!"  But any potential confusion that might thereby

5

result would be instantly removed when the consumer went to purchase "Zeer-Oh's!" and saw immediately that it had nothing to with "Zero."

For the same reasons, the fact that both products belong to the genus of sweet snack foods (the third factor) that are occasionally cross-marketed (the fourth factor) is of little relevance given the highly visible packaging barriers to potential confusion. Moreover, there is no evidence of actual confusion (the fifth factor), nor any proof of bad faith on Voortman's part (the sixth factor). As for the quality of the goods (the seventh factor), while both are relatively cheap, Zero emphasizes the quality of its taste, while Zeer-Oh's! emphasizes its healthy absence of trans fats. Finally, as to the sophistication of the relevant buyers (the eighth factor), while the level of sophistication of a purchaser of Zero is likely to be nominal, a certain degree of sophistication is presumed in Zeer-Oh's! appeal to trans fat watchers.

In short, based on what plaintiffs have so far offered, the Court regards the likelihood that these two marks will be confused to be little better than zero.[2] Discovery and proof at trial may alter

---

[2] Plaintiffs have also not demonstrated a likelihood of success on the merits on their N.Y. Gen. Bus. Law. §§ 349 and 350 claims. As to plaintiffs' § 350 claim, they have utterly failed to adduce any evidence demonstrating that any consumer relied on any allegedly false or misleading representation by defendant. See McDonald's v. Pelman, 396 F.3d 508, 511 (2d Cir. 2005). Though a showing of reliance is not necessary to maintain a § 349 claim, see id., plaintiffs' have not proffered sufficient evidence for this Court to conclude, at this stage, that defendant has engaged in any deceptive conduct. Accordingly, since it cannot be said that plaintiffs are likely to succeed, or have ever raised a serious question, on the merits of either their §§ 349 or 350 claim, plaintiffs' motion for a preliminary injunction based upon either statutory provision is hereby

6

this view, but based on what is presently before the Court, the Court hereby denies plaintiffs' motion for a preliminary injunction.[3]

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
April 25, 2005

---

denied. Additionally, as plaintiffs' preliminary injunction papers do not specifically reference their fifth claim, namely, trademark dilution in violation of New York General Business Law § 360-1, the Court has not considered it as basis for relief in reviewing this motion.

[3] The Court has carefully considered the other points that plaintiffs' vigorous counsel pressed in his papers and at oral argument, but finds them without merit.